IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **KETRINA JOHNSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-300 |
| | § | JURY REQUESTED |
| **CAPITAL ONE SERVICES, LLC,** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ketrina Johnson files this Original Complaint against Defendant Capital One Services, LLC alleging discrimination and retaliation in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (the "ADEA"), and 42 U.S.C. § 1981 ("Section 1981"). Plaintiff requests equitable relief, damages, interest, and costs for Defendant's unlawful acts.

### I.   PARTIES AND SERVICE

1. Plaintiff Ketrina Johnson ("Plaintiff") is a resident of Dallas County, Texas.

2. Defendant Capital One Services, LLC ("Defendant") is a limited liability company headquartered in Mclean, Virginia. Defendant may be served via its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

### II.   JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter involves controversies arising under the laws of the United States, including Title VII, the ADEA, and Section 1981.

4. Venue is proper in the Eastern District of Texas, under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and because a substantial part of the events or omissions forming the basis of the suit occurred in this District.

5. On January 4, 2024, Plaintiff timely dual-filed with the Texas Workforce Commission ("TWC") and Equal Employment Opportunity Commission ("EEOC") a "Charge of Discrimination" alleging discrimination on the basis of race and age. On January 8, 2024, Plaintiff received the EEOC's Notice of Dismissal and Right to File Civil Action (the "EEOC Right to Sue Letter").  This lawsuit is being filed within ninety (90) days of Plaintiff's receipt of the EEOC Right to Sue Letter.

6. All administrative and jurisdictional prerequisites have been met or have expired.

### III. FACTUAL SUMMARY

7. Plaintiff, who is Black American and 52 years of age, was hired by Defendant as a Design Operations Process Manager. Plaintiff worked a hybrid schedule at Defendant's location at 8000 Dominion Parkway, Town Center Building, Plano, Texas 75024, and remotely from her home in Grand Prairie, Texas.

8. Throughout Plaintiff's employment, she was the only person above the age of 45 and only Black American on her team.

9. When Plaintiff worked for Defendant, she was an "employee" as defined by the ADEA and Title VII.

10. At all times relevant, Defendant was an "employer" as defined by the ADEA and Title VII.

11. Defendant employed more than 500 employees who were employed for each of 20 or more calendar weeks in one or both of 2023 or 2022.

12. Senior Manager Cleave Treanor (Anglo-Caucasian, early 30s) hired Plaintiff. Treanor shared written expectations and metrics with Plaintiff to help her complete her job.

13. Treanor so was impressed with Plaintiff's work that he gave Plaintiff a raise in August 2022.

14. In fall 2022, Director Stephanie Rodriguez (Anglo-Caucasian, early 40s) returned to her position as Treanor and Plaintiff's supervisor, and Plaintiff began reporting directly to Rodriguez.

15. Upon her return, Rodriguez expressed surprise with Treanor's positive feedback and Plaintiff's raise, yet Rodriguez did not provide any negative feedback or coaching to Plaintiff.

16. In late January 2023, Rodriguez issued a year-end evaluation to Plaintiff. Rodriguez listed items in Plaintiff's review, including SLQ2CQ artifact development, as an opportunity for improvement, but SLQ2CQ artifact development had been assigned to Treanor, not Plaintiff.

17. When Plaintiff noted that Treanor was responsible for the mistakes in SLQ2CQ artifact development, Rodriguez ignored Plaintiff and became irate, threw a pen down on her desk, and exclaimed that she could not believe that Plaintiff had rated herself "Exceptional" in many areas.  Confused, considering her overall "Strong" rating, Plaintiff realized that Rodriguez viewed Plaintiff's work much more negatively than Treanor did.

18. When Plaintiff attempted to defend herself, Rodriguez repeatedly held a pen up to Plaintiff in a movement intended to "shush" Plaintiff, silencing Plaintiff with an aggressive and patronizing manner that Rodriguez never displayed to any of Plaintiff's significantly younger Anglo-Caucasian peers.

19. As the year continued, Rodriguez began regularly questioning whether or not Plaintiff intended to leave her position. Throughout spring and summer 2023, Rodriguez needled Plaintiff about returning to the office to work in-person full time (despite Plaintiff's position allowing hybrid in person-remote work), told Plaintiff that she would get "tired" of returning to the office, and repeatedly suggested Plaintiff "come talk to" Rodriguez about what Plaintiff planned on doing with her career.

20. Plaintiff, who had never expressed any interest in or intention of leaving, declined to engage with Rodriguez about leaving her employment.

21. In late spring to early summer 2023, Plaintiff asked Rodriguez when the two of them would meet for their "point of view" meeting (a performance update meeting). Rodriguez responded with a wordless grunt.

22. On July 25, 2023, Plaintiff received a mid-year evaluation ("MYE") with a "below strong" rating. Plaintiff was shocked when she read the evaluation, as none of the benchmarks for evaluation matched those that she had been given at the beginning of her employment.

23. Plaintiff reached out to Treanor and asked why the new benchmarks on her MYE did not match those given to her upon her hiring. Treanor then confirmed that he and Plaintiff's co-worker, Associate Brianna Sutton (Anglo-Caucasian, in her 20s), had received the new benchmarks from Rodriguez in January 2023.

24. Rodriguez finally provided the correct benchmarks to Plaintiff on August 14, 2023, yet Rodriguez provided no reasoning as to why she had not given the benchmarks to Plaintiff at the same time as Plaintiff's significantly younger Anglo-Caucasian co-workers.

25. Less than one month later, on August 18, 2023, Rodriguez called Plaintiff with a HR Business Partner and stated that she would be placing Plaintiff on a Performance Improvement Plan ("PIP") for her failure to meet benchmarks.

26. Neither Rodriguez nor any other supervisor of Plaintiff's had ever provided verbal coaching, negative feedback, or a coaching plan to Plaintiff prior to the issuance of the PIP.

27. In her continuing efforts to push Plaintiff out of her position, Rodriguez then offered Plaintiff an ultimatum: attempt to finish the PIP (which Rodriguez had not yet sent to Plaintiff), or "opt out," give all her work to Rodriguez "immediately," and resign.

28. Plaintiff reminded Rodriguez that Rodriguez had failed to send Plaintiff the benchmarks at the same time as her co-workers, which was directly responsible for Plaintiff's alleged failures. Instead of addressing her racially disparate treatment of Plaintiff, Rodriguez attempted to deflect and deter Plaintiff's complaint by playing the victim.

29. On August 21, 2023, Plaintiff (who had not yet received a copy of the PIP) then filed a complaint with Defendant's Associate Relations Department ("ARD") detailing the disparate treatment from Rodriguez and requesting that the PIP be revoked.

30. On August 23, 2023, Rodriguez shared the Performance Improvement Plan ("PIP") with Plaintiff. The PIP included ambiguous and nonspecific language detailing Plaintiff's behavior, including such nebulous criticism as "not leaning into being a leader."

31. On August 26, 2023, ARD team member Tasha Smith told Rodriguez that her investigation had indicated that Plaintiff's complaints were unsubstantiated. However, Smith also admitted that she had not even asked Rodriguez why the 2023 benchmarks had not been given to Plaintiff at the same time as Plaintiff's significantly younger Anglo-Caucasian co-

workers. When Plaintiff provided her rebuttal to the MYE—which explicitly mentioned discrimination—to Smith, Smith then transferred the case to Investigator Eleni Arbuckle.

32. Plaintiff requested a definition of what "not leaning into being a leader" meant as well as an explanation of the expectations that Rodriguez had for Plaintiff to "lean into" leadership, but Rodriguez never explained the phrase or her expectations to Plaintiff.

33. After the PIP's scheduled end date of October 23, 2023, Rodriguez did not provide any update to Plaintiff regarding whether or not Plaintiff had passed or failed the PIP.

34. One week later, on October 30, 2023, Vice President Renee Rives and HR Business Partner Emmanuel Motsiopoulos terminated Plaintiff's employment via video call, citing "position elimination" due to financial changes.

35. Rives stated that Plaintiff would be placed on "redeployment" to give Plaintiff a chance to find another job, but if she could not find another job, her employment would be fully terminated.

36. Rives then forbade Plaintiff from coming into the office and forbade Plaintiff from discussing the circumstances of her redeployment to any other employee.

37. Since Plaintiff was unable to secure a new position during the "redeployment" period, her employment was terminated. However, she would not have been selected for elimination but for Rodriguez's discriminatory actions and/or retaliatory intent after Plaintiff complained to HR.

38. At the time Plaintiff's employment with Defendant ended, she possessed all certifications, degrees, and licenses required for her position.

39. Defendant's reasons for terminating Plaintiff's employment were mere pretext for terminating her in violation of the ADEA, Title VII, and Section 1981.

40. All conditions precedent have been performed or have occurred.

## IV. CAUSES OF ACTION

**COUNT ONE: DISCRIMINATORY DISCHARGE IN VIOLATION OF TITLE VII**

41. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

42. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under Title VII.

43. Plaintiff's termination was on the basis of her race.

44. Plaintiff's termination was malicious or made with reckless indifference to her federally-protected rights.

45. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

46. Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

47. Plaintiff seeks equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT TWO: RETALIATORY DISCHARGE IN VIOLATION OF TITLE VII**

48. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

49. After Plaintiff complained of discrimination by Rodriguez, which resulted in the issuance of a discriminatory PIP, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

50. Plaintiff's termination was on the basis of her complaint of discrimination in violation of Title VII.

51. Plaintiff's termination was malicious or made with reckless indifference to her federally-protected rights.

52. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

53. Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

54. Plaintiff seeks equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT THREE:    DISCRIMINATORY DISCHARGE IN VIOLATION OF 42 U.S.C. § 1981**

55. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

56. Plaintiff and Defendant had entered into a valid contract for employment, which contract was terminated by Defendant on the basis of Plaintiff's race.

57. Defendant's termination of Plaintiff's employment denied her the same rights to make and enforce contracts as is enjoyed by white citizens pursuant to 42 U.S.C. § 1981.

58. Defendant's termination of Plaintiff's employment was intentional and was malicious or made with reckless indifference to her protected rights.

59. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

60. Plaintiff's damages include lost wages, employment benefits and other compensation, past and future pain and suffering, past and future mental anguish, inconvenience, and loss of enjoyment of life.

61. Plaintiff seeks equitable relief as may be appropriate, damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT FOUR:    RETALIATORY DISCHARGE IN VIOLATION OF 42 U.S.C. § 1981**

62. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

63. After Plaintiff complained of discrimination, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

64. Defendant's termination of Plaintiff's employment denied her the same rights to make and enforce contracts as is enjoyed by white citizens pursuant to 42 U.S.C. § 1981.

65. Defendant's termination of Plaintiff's employment was intentional and was malicious or made with reckless indifference to her protected rights.

66. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

67. Plaintiff's damages include lost wages, employment benefits and other compensation, past and future pain and suffering, past and future mental anguish, inconvenience, and loss of enjoyment of life.

68. Plaintiff seeks equitable relief as may be appropriate, damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT FIVE:   DISCRIMINATORY DISCHARGE IN VIOLATION OF THE ADEA**

69. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

70. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the ADEA.

71. Plaintiff's discharge was because of her age in violation of the ADEA.

72. Plaintiff's discharge was a willful violation of the ADEA.

73. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

74. Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

75. Plaintiff seeks damages, statutory liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT SIX:   RETALIATORY DISCHARGE IN VIOLATION OF THE ADEA**

76. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

77. After Plaintiff complained of discrimination by Rodriguez, which resulted in the issuance of a discriminatory PIP, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

78. Plaintiff's termination was on the basis of her complaint of discrimination in violation of the ADEA.

79. Plaintiff's discharge was a willful violation of the ADEA.

80. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

81. Plaintiff's damages include lost wages, past and future mental anguish, inconvenience, and loss of enjoyment of life.

82. Plaintiff seeks equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**V.   JURY DEMAND**

83. Plaintiff demands a jury trial and has tendered the appropriate fee.

**VI.   PRAYER**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Issue summons for Defendant to appear and answer;

B. Award to Plaintiff a judgment against Defendant for:

    1. Equitable relief, including but not limited to the following injunctive and other equitable relief:

   a. Prohibiting Defendant from engaging in unlawful discrimination;

   b. Requiring Defendant to enact policies and procedures that require adequate training of their employees with respect to discrimination, harassment, and retaliation;

   c. Requiring Defendant to enact policies and procedures that require adequate training of their executive, managerial, supervisory, and human resources personnel to lawfully handle reports of discrimination, harassment, and retaliation in a prompt and sensitive manner; and

   d. Reporting to the Court the manner of Defendant's compliance with the terms of a final order issued by the Court;

2. Past lost wages and benefits and either reinstatement or future lost wages and benefits;

3. Compensatory, liquidated, and exemplary damages in the maximum amount permitted by law;

4. Pre- and post-judgment interest;

5. Attorneys' fees;

6. Expert witness fees and other litigation expenses; and

7. Costs.

Plaintiff further requests such other relief to which she is entitled in law or in equity.

Respectfully Submitted,

*/s/ Jennifer J. Spencer*
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
4004 Belt Line Road, Suite 210
Addison, TX 75001
(T) (972) 458-5301
(F) (972) 532-8799

**ATTORNEYS FOR PLAINTIFF**
**KETRINA JOHNSON**